# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BECKLEY DIVISION

SHARON WALTERS, et al.,

        Plaintiffs,

v.                                    CIVIL ACTION NO. 5:17-cv-03954

SIEMENS INDUSTRY, INC., et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Motion to Declare Distribution of Settlement Proceeds* (Document 78), the *Brief in Support of Motion to Declare Distribution of Settlement Proceeds* (Document 78-1), *Sharon Walters' Response to Plaintiff's Motion to Declare Distribution of Settlement* (Document 82), the *Response of Hanna Walters to Plaintiff's Motion to Declare Distribution of Settlement* (Document 86), and *Sharon Walters Reply to Response of Hanna Walters to Plaintiff's Motion to Declare Distribution of Settlement* (Document 89). In addition, the Court has considered the *Order* (Document 91), wherein the District Court for the Eastern District of Kentucky – Ashland transferred this matter to this Court for consideration of distribution of the settlement proceeds. The Court permitted the parties to file additional briefing, if desired, following transfer, and has reviewed the *Motion to Declare Distribution of Settlement Proceeds and Approve Wrongful Death Settlement, if Required* (Document 96) and the *Brief of Hanna Walters on Distribution of Settlement Proceeds* (Document 97). For the reasons stated herein, the Court finds that West Virginia law is applicable.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

A brief review of the factual allegations and somewhat convoluted procedural history is necessary to provide context for the ruling contained herein. Dwayne Walters[1] died in a work related accident on June 23, 2015. He was a West Virginia resident and entered into an employment relationship with Defendant Siemens Industries, Inc., in West Virginia. Siemens contracted to perform work at the AK Steel plant in Ashland, Kentucky, and temporarily assigned Dwayne to work there. The Plaintiff alleges that Dwayne was assigned to use the Doble Analyzer, which Siemens owned and maintained from its Beckley location, to perform maintenance, repair, and testing of the G.E. Transformer at the A.K. Steel plant. The Plaintiff alleges that the G.E. Transformer and the Doble Analyzer were in dangerous and defective condition. It is further alleged that Dwayne was instructed or permitted to perform his tasks without proper safety equipment and precautions, resulting in his electrocution. Sharon Walters, Dwayne's widow, sought and received workers' compensation benefits in West Virginia, under West Virginia law. Dwayne also had an adult son and a daughter, Hanna, who was a minor at the time of his death but has since reached the age of majority. The Walters family all reside in West Virginia.

The Plaintiff filed identical complaints in state court in Boyd County, Kentucky, on June 22, 2016, and in Raleigh County, West Virginia, on June 6, 2016. The complaints assert the following causes of action: Count I – Negligence, against AK Steel; Count II – Deliberate Intent, against Siemens; Count III – Negligence, against General Electric and Doble; Count IV – Breach of Warranty, against General Electric and Doble; and Count V – Strict Liability, against General Electric and Doble. Both cases were removed to federal court, and this Court transferred the

---

[1] For ease of reference and to avoid confusion, the Court will refer to the decedent and his family members by their first names.

action filed in West Virginia to the district court in Kentucky on November 16, 2016, pursuant to 28 U.S.C. § 1404(a), primarily to avoid having both actions pending simultaneously. The parties engaged in discovery and mediation while the matter was pending in Kentucky, and reached a settlement on April 12, 2017. The Kentucky court had issued no substantive rulings prior to mediation, including any rulings with respect to the choice of law. Following the settlement at mediation, Sharon sought distribution of the settlement proceeds and notified the court of the dispute between her and Dwayne's daughter, Hanna Walters, regarding whether West Virginia or Kentucky law applies to distribution.

## DISCUSSION

In his order transferring this matter to West Virginia, Judge Henry Wilhoit, Jr., summarized the differences between West Virginia and Kentucky law regarding distribution of wrongful death proceeds. Under Kentucky law, half of the net proceeds go to the spouse, and the remaining half is divided between the children of the deceased. Ky. Rev. Stat. § 411.130(2)(b). Under West Virginia law, a court or jury must determine how to distribute proceeds between "the surviving spouse and children, including adopted children and stepchildren, brothers, sisters, parents, and any persons who were financially dependent upon the decedent at the time of his or her death or would otherwise be equitably entitled to share in such distribution." W.Va. Code § 55-7-6(b). Judge Wilhoit further concluded that "Although the accident giving rise to this litigation occurred in Kentucky, at this juncture of the litigation, West Virginia is the state in which the beneficiaries reside. No reasonable argument can be made which suggests that Kentucky has a strong concern with how the proceeds are distributed." (Transfer Order at 2, Document 91.)

Sharon argues that Kentucky law applies under Kentucky choice of law rules because the court and the parties "have already applied Kentucky law to the liability and damages recoverable in this matter." (S. W. Resp. at 4) (Document 82.) She further points out that under Kentucky law, the matter could be promptly resolved without a fact-intensive dispute between the decedent's widow and children. Hanna argues that West Virginia law should apply to the distribution because Dwayne's injury occurred on the job, he had a West Virginia employment relationship, Sharon received worker's compensation under West Virginia law, and all potential beneficiaries reside in West Virginia.

Prior to considering which state substantive law should apply, the Court must determine which state's conflict of laws rules should apply. In general, "[a] federal court sitting in diversity must apply the choice-of-law rules from the forum state." *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999). However, when a case has been transferred for convenience or in the interest of justice pursuant to 28 U.S.C. § 1404(a), the transferee court should apply the law of original forum state. *Van Dusen v. Barrack*, 376 U.S. 612, 638–39 (1964). The Plaintiff filed this suit in both West Virginia and Kentucky. This Court transferred the West Virginia action pursuant to § 1404(a). Although Judge Wilhoit did not set forth the legal basis for the transfer to this Court, it appears to be a transfer in the interests of justice or for the convenience of the parties pursuant to § 1404(a). Because the complaint appears to have been filed in West Virginia first, and the rule regarding transferred cases serves little purpose where the action was filed in both venues, the Court will apply West Virginia choice of law rules.[2]

---

2 The Court notes, however, that it would reach the same result under Kentucky choice of law rules. Kentucky determines choice of law based on "which state has the most significant relationship to the transaction and the parties." *Poore v. Nationwide Mut. Ins. Co.*, 208 S.W.3d 269, 271 (Ky. Ct. App. 2006) (quoting *Lewis v. American Family Ins. Group,* 555 S.W.2d 579, 581 (Ky.1977) and *Restatement of Conflict of Laws, 2d,* sec. 188 (1971)). Here, although

4

In general, West Virginia "adheres to the conflicts of law doctrine of *lex loci delicti*" to apply the substantive law of the place of injury in tort cases. Syl. Pt. 1, *Paul v. Nat'l Life*, 352 S.E.2d 550, 550 (W.Va. 1986). Where the substantive law of another state "contravenes the public policy" of West Virginia, though, courts in West Virginia do not apply that law. *Id.* at 556; *Vass v. Volvo Trucks N. Am., Inc.*, 315 F. Supp. 2d 815, 817 (S.D.W. Va. 2004) (Faber, C.J.) (noting holdings that laws permitting a defense of contributory negligence are against public policy in West Virginia). It is also well-established that an employee who is entitled to worker's compensation under West Virginia law may bring a deliberate intent suit under West Virginia law, even if the accident occurred at an out-of-state workplace. *Bell v. Vecellio & Grogan, Inc.*, 475 S.E.2d 138, 145 (W. Va. 1996) (employee with a West Virginia employment relationship who was injured while assigned to work in Maryland could maintain a deliberate intent action under West Virginia law).

The parties frame the issue somewhat differently. Hanna suggests that the Court should focus on the only issue that remains in this matter to determine the appropriate law: how to distribute the proceeds of a settlement related to the death of a West Virginia resident, amongst beneficiaries who are all West Virginia residents. Sharon argues that the Court should consider the case as a whole, and determine which law applies to the substantive claims related to the accident, which occurred in Kentucky. West Virginia does not appear to have directly addressed the question of whether distribution may be made according to West Virginia law even where

---

the accident occurred in Ashland, Kentucky, Dwayne, his wife, and his children all reside in West Virginia, and the employment relationship that brought him to the A.K. Steel plant and assigned him the allegedly dangerous work was based in West Virginia.

5

another state's laws govern the underlying cause of action. In a medical malpractice case involving an infant born in Ohio, but living in West Virginia at the time of the settlement, West Virginia courts applied West Virginia law to approval of the settlement, though the medical malpractice case was brought in Ohio. *In re E.B.*, 729 S.E.2d 270, 276 (W. Va. 2012). The authority in other states is split. *Compare In re Estate of Waters*, 2001 UT App 164, ¶ 20, 29 P.3d 2, 6 (finding that Nevada law applied to distribution where accident occurred in Nevada, tortfeasor resided in Nevada, and decedents and all beneficiaries resided in Utah) *with In re Estate of Blanton*, 824 So. 2d 558, 561 (Miss. 2002) (finding, under substantial contacts test, that Mississippi law applied to the distribution of settlement proceeds where Mississippi residents were killed in a car accident while vacationing in Arkansas, and most beneficiaries resided in Mississippi).

Here, the decedent and his beneficiaries all reside in West Virginia. Thus, if the Court applies conflict-of-laws principles only to the dispute regarding distribution, West Virginia law would apply, as that dispute arises and is centered in West Virginia. If the Court considers conflict-of-law principles as to the underlying claims, the result is less clear-cut. West Virginia law applies to the deliberate intent claim, and the accompanying distribution of proceeds, because Dwayne's employment relationship was governed by West Virginia law. *Bell v. Vecellio & Grogan, Inc.*, 475 S.E.2d 138, 145 (W. Va. 1996). The tort claims, standing alone, would be governed by Kentucky law, because the accident occurred in Kentucky. However, the tort claims are not presented independent of the deliberate intent claim: Dwayne was allegedly injured when he was instructed to do dangerous tasks without appropriate safety precautions, using allegedly dangerous and defective equipment. In addition, a rule that calls for the application of different distribution schemes to a settlement based on the multiple causes of action alleged in the complaint

6

would often be impractical. The Court has no information regarding the structure of the settlement in this case, but it is not uncommon for settlements with multiple defendants to be structured in a way that accounts for potential defenses, indemnification, cross-claims, or relationships between the defendants, rather than strictly apportioned based on the claims asserted. Thus, the Court finds that the incident and all claims arising out of it should properly be governed by West Virginia law due to its connection to the decedent's West Virginia employment relationship.[3]

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **FINDS** that West Virginia law applies to the distribution of the settlement proceeds in this matter. Accordingly, the Court **ORDERS** that a hearing be scheduled for **December 6, 2017, at 10:00 a.m.** The Court further **ORDERS** that the parties contact the Honorable Omar J. Aboulhosn, United States Magistrate Judge for the Southern District of West Virginia, and schedule a mediation prior to the distribution hearing.

The Court **DIRECTS** the Clerk to send a copy of this Order to Magistrate Judge Omar J. Aboulhosn, to counsel of record, and to any unrepresented party.

ENTER: November 1, 2017

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

3 Although the Court makes no finding on the issue, it is possible that the West Virginia Supreme Court of Appeals would find that a distribution scheme that fails to account for equitable considerations, including financial dependence on the decedent, is in violation of public policy in this state. If West Virginia law did not apply under conflict-of-law principles, the Court would find it appropriate to certify the question to the West Virginia Supreme Court of Appeals for resolution.